IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BONNIE CAMPBELL,            )<br>                             )<br>    Plaintiff,                )<br>                             )<br>    v.                       )<br>                             )<br>COMMISSIONER OF SOCIAL SECURITY,  )<br>                             )<br>    Defendant.               ) | Case No. 3:06-cv-495-JPG |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Petition for Review of the Commissioner's Decision Denying Waiver of Recovery of Overpayment Disability Insurance Benefits filed by Bonnie Campbell ("Plaintiff") on December 18, 2006 (Doc. 13). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the defendant, and that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**[1]

**Procedural Background**

Plaintiff originally filed for disability benefits on October 16, 1981 (Tr. 30). Thereafter, on September 24, 1982, the Commissioner of Social Security ("Commissioner") found that Plaintiff was disabled since September 25, 1981, and that Plaintiff was entitled to disability

---

[1] Plaintiff's medical history is omitted from this report because the parties raise no dispute as to Plaintiff's past, present, or future eligibility to receive disability benefits, and because the instant controversy may be resolved without any reference to Plaintiff's medical history.

1

insurance benefits based on her October 1981 application (Tr. 15).  Plaintiff began employment in April 1983 and was gainfully employed, intermittently, during periods between April 1983 and March 2001 (Tr.16).

On March 28, 2001, the Commissioner informed Plaintiff that she was no longer eligible to receive monthly disability benefits because of her periods of gainful work activity between October 1991 and April 2001 (Tr. 166).  On May 5, 2001, the Commissioner informed Plaintiff that she had been overpaid $57,103.20 in disability insurance benefits in the intervening years (Tr. 178).

On May 12, 2003, Plaintiff requested a waiver of recovery of the overpayment on the basis that she was not at fault in causing the overpayment and could not afford to repay it (Tr. 242).  The Commissioner denied Plaintiff's request for a waiver on March 8, 2004, and again on June 30, 2004, after holding a personal conference on the matter (Tr. 258, 268).  Plaintiff appealed on August 5, 2004, requesting a hearing before an Administrative Law Judge ("ALJ") (Tr. 269).

The hearing was held on April 11, 2005 before ALJ Robert J. Curran (Tr. 15).  The ALJ issued Plaintiff an unfavorable decision on July 15, 2005, finding that she was not without fault in connection with the $57,103.20 overpayment because she failed to furnish information which she knew or should have known was material, and because she accepted disability payments which she either knew or could have been expected to have known were incorrect (Tr. 18).  The Appeals Council denied review on August 17, 2006, which constituted the final review of the agency (Tr. 7).

Plaintiff filed this suit in the U.S. District Court for the Southern District of Illinois on

June 28, 2006, alleging that the ALJ erred in finding that she was "not without fault" regarding the overpayment. More specifically, Plaintiff argued that the ALJ did not adequately consider her fourth grade education in his determination that she could have been expected to know that the payments were incorrect during the near-decade long period in which she received them.

**Plaintiff's Statements and Hearing Testimony**

In a statement she submitted in connection with the personal conference held in June 2004, Plaintiff stated that she told agents at the Social Security Administration ("SSA") to cut off her benefits on at least two occasions during periods of work activity (Tr. 260). She also stated there that agents told her that the "benefits could not be terminated" because it would cause her to lose Medicare (Tr. 260).

Only Plaintiff testified at the hearing. In response to questions posed by her attorney, Plaintiff testified that she had a fourth grade education and that she required help to fill out Social Security forms (Tr. 409). She further testified that her husband filed her original Social Security application sometime in the 1980's, that she was never taught specific rules regarding her eligibility to receive monthly benefits, and that she did not understand the paperwork she received from the SSA in the early 1990's (Tr. 404-405, 410). She did testify, however, that she understood her obligation to report her work activity to the SSA (Tr. 405).

Plaintiff then testified that she telephonically reported her work activities to the SSA throughout the late 1980's and early 1990's (Tr. 406). She further testified that agents at the SSA never told her on the phone that it was her responsibility to send back checks she got during periods of non-eligibility for benefits (Tr. 407). She also testified that agents told her that the SSA would stop mailing her checks (Tr. 407). She then testified that agents told her that she

would have to pay her own medical bills if she were to cancel her benefits (Tr. 409).

Plaintiff testified further that she never lied to SSA and that she never failed to tell its agents something she thought they should hear (Tr. 410). Similarly, she testified that she never received a check which she felt she was not due (Tr. 411).

Lastly, Plaintiff testified that although her monthly expenses exceeded $700, her monthly income was between $640 and $660 (Tr. 411, 417).

**ALJ's Findings and Conclusions**

The ALJ found that Plaintiff was overpaid $57,103.20, and that the overpayments occurred between the benefit termination month of October 1991 and April 2001 (Tr. 16). The ALJ also found that Plaintiff's fourth grade education and physical disability did not limit her ability to understand that she was not entitled to disability payments during periods of substantial gainful activity (Tr. 17). The ALJ further found that Plaintiff's work as a Nurse Assistant entailed an intellectual capacity amenable to understanding a duty to report work to the SSA (Tr. 17). Next, the ALJ found that Plaintiff's 1991 earnings totaling $11,012.79 would have indicated to a person of her capacity that she was not entitled to simultaneous disability payments (Tr. 17). The ALJ also found that Plaintiff was at fault for not furnishing material wage information to SSA during periods prior to 1991 (Tr. 16,17), finding further that Plaintiff accepted payments which she knew or could have been expected to have known were incorrect (Tr. 17). The ALJ concluded that Plaintiff was not without fault in connection with the $57,103.20 overpayment, and that she was therefore not entitled to a waiver of repayment.

CONCLUSIONS OF LAW

The standard for judicial review of an ALJ's finding that a claimant is not without fault in

4

respect to an overpayment is limited to whether the "ALJ's findings and conclusion were supported by substantial evidence [and whether] the ALJ properly applied the appropriate legal standard. " Milton v. Harris, 616 F.2d 968, 973 (7th Cir. 1980); 42 U.S.C. §405(g) ("[t]he findings of the Commissioner of Social Secuirty, as to any fact, if supported by substantial evidence, shall be conclusive ..."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility") (quotation marks and citations omitted).  Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 101 (1938)); see also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995); Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

The Social Security Act ("Act") provides that "[w]ith respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall ... require such overpaid person or his estate to refund the amount in excess of the correct amount[.]" 42 U.S.C. §404(a)(1)(A).  However, the Act also provides that there shall be no "recovery by the United States [from] any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." Id. at §404(b); see also Lahr v. Richardson, 476 F.2d 1088, 1090 (7th Cir. 1973).  The Commissioner promulgated

20 C.F.R. §404.507 to explain how a decision-maker will determine if an individual is "without fault" in causing an overpayment under §404(b). That regulation provides that "fault" is found when:

> "the facts show that the incorrect payment to the individual ... resulted from: (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect."

20 C.F.R. §404.507. The regulation also entails that, in determining whether an individual is at fault, the ALJ "will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations the individual has." Id.

The question before the Court is whether the ALJ's conclusion that Plaintiff was not without fault is supported by substantial evidence. The ALJ concluded that Plaintiff was at fault based upon the following two findings: (1) she failed to furnish the SSA with material information about her work; and (2) she accepted payments that she knew or could have been expected to know were incorrect. Although the first of these findings is not supported by substantial evidence in the record, the second finding does draw substantial support from the record and thereby supports the ALJ's conclusion that Plaintiff was not without fault.

The Commissioner's regulations hold that a determination of payee fault must examine whether "the facts show that **the incorrect payment** to the individual ... resulted from [the payee's incorrect statements, material omissions, or knowing acceptance of incorrect payments.]" C.F.R. §404.507 (emphasis added). The ALJ found fault here by examining

Plaintiff's material omissions resulting in a 1989 overpayment rather than by examining omissions *vel non* resulting in the overpayment now under review. Specifically, although the record shows that Plaintiff's pre-1991 omissions resulted in an overpayment of $2,213.10 between July 1988 and July 1989 (Tr. 94), the ALJ refers to those omissions when he discusses the $57,103.20 overpayment that accrued between 1991 and 2001 (Tr. 16). By relating the latter overpayment to omissions that caused the former overpayment, the ALJ misapplied the plain language of 20 C.F.R. §404.507, which holds that a finding of fault must derive from a material omission that leads to the overpayment in question. Id. Additionally, in concluding that Plaintiff was at fault for the overpayment in question, the ALJ provides no discussion in his written decision of whether Plaintiff failed to furnish information during between 1991 and 2001, which is the period wherein Plaintiff received the erroneous payments. Likewise, he did not include a discussion of why and how the pre-1991 material omissions led to the overpayment for which he assigned Plaintiff fault. Therefore, the ALJ's first finding that Plaintiff failed to furnish information cannot stand because it, at best -- lacks an adequate discussion of the issues, and at worst -- misapplied the Commissioner's guidance regulations as to determinations of fault on the basis of material omissions. Lopez, 336 F.3d at 539.

  Although the ALJ failed to adequately discuss the issues with respect to his finding that Plaintiff failed to furnish material information, he did discuss at length the factors leading to his second finding that Plaintiff knew or could have been expected to know that the payments were incorrect. The Court examines that finding in depth below.

  The ALJ found, referring to the Dictionary of Occupational Titles, that Plaintiff's semi-skilled work as a Nurse Assistant entailed reading vital signs, monitoring fluid and food intake,

and following instructions for care.  Pursuant to the finding that Plaintiff had sufficient intelligence to perform those duties, and notwithstanding the fact that she had not continued beyond the fourth grade, the ALJ concluded that Plaintiff could have been expected to know that the disability payments were incorrect during times of substantial gainful activity (Tr. 17).  The ALJ's analysis incorporating a discussion of Plaintiff's intellectual capacity sufficiently rebuts Plaintiff's assertion that the ALJ did not properly consider her limited education.

Next, the ALJ called particular attention to Plaintiff's 1991 earnings amount of $11,012.79, which was more earnings than Plaintiff had earned in any previous year (Tr. 17).  According to the ALJ, Plaintiff's comparatively high earnings in that year should have been a clear indicator to her that she was not entitled to simultaneous benefits.  The ALJ reasoned that, on the basis of the that indicator, Plaintiff could have been expected to know that the payments were incorrect (Tr. 17).  Similarly, the ALJ pointed out that Plaintiff earned wages in other years[2] during the overpayment period, which should have indicated to her that the simultaneous monthly benefit payments were incorrect (Tr. 17).

Further, the ALJ called attention to the fact that, prior to and during 1991, the SSA mailed Plaintiff notices indicating that she would not be entitled to payments during periods of substantial gainful activity and Plaintiff submitted forms to SSA to report some of those periods (Tr. 17, 40, 47, 58, 59, 63, 67, 82, 85, 87).  According to the ALJ, Plaintiff was on notice of the incorrectness of the overpayments by virtue of the SSA mailings and the forms Plaintiff submitted, each of which indicated the inverse relationship between benefits eligibility and periods of substantial gainful activity (Tr. 17).

---

[2]Plaintiff earned $13,655.25 in 1993; $10,909.06 in 1999; and $13,852.24 in 2000.

Last, the ALJ called attention to Plaintiff's written statement of June 14, 2004 (Tr. 260), stating that she believed that any effort to cancel the monthly disability payments would have incidentally resulted in the loss of her Medicare benefits. This fact indicated to the ALJ that Plaintiff was aware that the overpayments were incorrect and that her fear of jeopardizing her Medicare eligibility made her reluctant to report payments she knew were incorrect. The Commissioner's brief casts this factual finding as all but dispositive on the question of whether Plaintiff knew the overpayments were in error, alluding that her fear of losing Medicare supports the inference that she knew the payments were incorrect (Doc. 17, p.4). The Court does not find that inference reasonable, nor was it persuasively argued in the Commissioner's brief. Nonetheless, although reasonable people may disagree as to whether this fact, taken in isolation, demonstrates Plaintiff's understanding of her eligibility to receive monthly disability payments, the highly deferential standard that this Court must afford the ALJ in his weighing of facts allows his decision to stand in light of the other substantial evidence he relies upon in his written opinion. See Goliembiewski, 322 F.3d at 915 ("[T]he reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility."). Such other substantial evidence includes the ALJ's findings that: (1) Plaintiff's work experience as a Nurse Assistant indicated an intellectual capacity to understand that disability payments were not due during periods of substantial gainful activity; (2) Plaintiff's comparatively high earnings during the ten-year period of overpayments should have indicated to her that the simultaneous monthly payments were incorrect; and (3) the SSA's mailings to Plaintiff indicating that benefits do not accrue during periods of substantial wages, along with her pre-1991 compliance with the work reporting

requirements, indicate that Plaintiff could have been expected to know that the overpayments were indeed in error.

As stated above, the ALJ's decision must be affirmed if the findings are supported by substantial evidence. Id.  The Court finds that the ALJ's finding that Plaintiff could have been expected to know that the payments were incorrect is supported by the substantial evidence in the record.  Likewise, Plaintiff has failed to show that the ALJ committed an error of law with respect to that finding.  Therefore, the ALJ's decision must be upheld.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Petition for Review of the Commissioner's Decision Denying Waiver of Recovery of Overpayment Disability Insurance Benefits filed by Plaintiff on December 18, 2006 (Doc. 13) be **DENIED**, that **JUDGMENT** be entered in favor of the defendant, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 20, 2007**

                                                *s/ Donald G. Wilkerson*
                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**